**Clint SMITH, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security Defendant.**

**No. 99 C 1139.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 2, 1999.

Frederick J. Daley, Frederick J. Daley, Ltd., Chicago, IL, for Plaintiff.

James J. Kubik, Assistant United States Attorney, Shefali N. Baxi, Assistant Regional Counsel, Social Security Administration, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

DENLOW, United States Magistrate Judge.

Plaintiff Clint Smith ("Smith") brings this action pursuant to 42 U.S.C. § 405(g)

to review the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Smith's claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Smith had been awarded disability insurance benefits in 1988 due to alcoholism. Under Public Law 104–121, he was notified that his benefits would cease, effective January 1, 1998 unless he could show that he continued to be disabled because of a severe impairment unrelated to alcoholism. Following a hearing, the Administrative Law Judge, Gilbert Drucker ("ALJ"), found that Smith was not disabled. (A.R. at 18–32.) The Appeals Council denied Smith's request for review of the ALJ's decision. (A.R. at 6–7). Smith subsequently filed his complaint for judicial review in this Court.

This matter comes before the Court on cross-motions for summary judgment. The issue to be decided is whether there is substantial evidence in the record to support the ALJ's conclusion that Smith is not disabled. For the reasons set forth below, the Court grants Defendant's motion for summary judgment, denies Smith's motion, and affirms the ALJ's decision.

## I. FACTUAL BACKGROUND

### A. Testimony

#### 1. Smith's Testimony

Smith appeared with counsel and testified at a hearing before the ALJ on April 14, 1997. (A.R. at 40–101.) Smith was approximately 61 years old at the time of the ALJ's decision. (A.R. at 23, 48.) Smith has a ninth grade education and can read and write. (A.R. at 23, 117.) Prior to receiving disability benefits, Smith was employed from 1960–1984 at a plating company, first as a semi-skilled laborer for twelve years and then as a foreman for twelve years. (A.R. at 52.) His duties included operating a conveyor and a forklift, supervising others, working with chemicals, and completing reports. (A.R. at 23, 52.) His position required him to be on his feet eight hours at a time, to lift weights as much as 100 pounds, and to

constantly bend, reach, and lift. (A.R. at 53.) The position is classified as semi-skilled, heavy exertional work. (A.R. at 23.)

Smith stopped working at the plating company in 1985. He then received unemployment benefits for approximately six to twelve months. (A.R. at 56.) Subsequent to receiving unemployment benefits, he received public aid for about two and one-half years and worked for a three month period for the City of Chicago during 1986 or 1987. (A.R. at 23, 57.) After public aid, he received Social Security disability benefits starting in 1988.

Smith's testimony was confused. He first testified that he went on disability for alcoholism in 1985, (A.R. at 42) but later stated that the disability payments started in 1988. (A.R. at 47.) He then testified that he was drinking at the time disability benefits were awarded in 1985. (A.R. at 42.) When the ALJ asked when he had stopped drinking, Smith stated that he had quit drinking "in the early 80's," (A.R. at 43) but later claimed he stopped drinking in 1987 except for three or four beers a week. (A.R. at 44). He changed his story a third time and then stated that he quit drinking at the end of 1988, except for three beers a week. (A.R. at 47.)

Smith claims that he is disabled because he has an ulcer, cirrhosis of the liver, and arthritis. (A.R. at 58.) He stated that he saw his treating physician, Dr. James P. Baraglia, four to five times a year for hypertension. (A.R. at 60.) He further mentioned that his shoulders and knee are "shot" and that his arthritis hurts "all over." (A.R. at 61–62.) He has had an inverted right ankle his entire life. (A.R. at 62.)

He claims he has severe pain, a 6 on a scale of 1 to 10, two to three times a week, depending on the position of his body. (A.R. at 65.) He explained that his back only experiences severe pain when he bends over (A.R. at 84) and his shoulders only hurt when he turns his arms or raises them above shoulder level. (A.R. at 87.)

The rest of the time, his pain is mild. (A.R. at 68.)

He takes six extra strength "non-aspirin" a day to relieve his arthritis pain when it is severe, (A.R. at 66) which reduces his pain to a moderate level, a 4 on a scale of 1 to 10. (A.R. at 67.) His doctor has not prescribed any prescription medicine for his pain. (A.R. at 67.) He takes three tablets a day for high blood pressure, which controls his blood pressure most of the time, although he claims to get "woozy" when he bends over. (A.R. at 69.)

He has pain from his ulcer two or three times a week that is controlled by taking non-aspirin. (A.R. at 70.) He was unable to describe any way in which the cirrhosis of the liver limited him from working. (A.R. at 70.)

He is able to stand in place for twenty to twenty-five minutes with no problems. (A.R. at 72.) He takes a daily walk for three to four blocks. (A.R. at 72.) He is able to walk five blocks, stopping a couple times along the way to catch his breath. (A.R. at 74.) He is able to sit for twenty-five to thirty minutes before his back gives him "a problem." (A.R. at 74.) He does not need to elevate his legs. (A.R. at 83.) He sits and watches television for a half hour at a time, walking around for about the time of three commercials before he resumes watching television again for another thirty minutes. (A.R. at 82.) He regularly attends an hour long church service. (A.R. at 76.)

He does his own grocery shopping and picks up fifteen to twenty-pound bags of groceries. (A.R. at 74.) He claimed that the maximum he could lift was fifteen to twenty pounds with one hand, (A.R. at 75) and that he could probably lift up to thirty pounds with two hands. (A.R. at 86.) He has no problem lifting fifteen to twenty-pound grocery bags. (A.R. at 86.) Lifting over fifty pounds bothers him. (A.R. at 86.)

Smith cooks and cleans his three room apartment, (A.R. at 78) although he takes a break every eight to ten minutes because his elbows hurt. (A.R. at 81.) He walks to the basement of his apartment building to do his own laundry. (A.R. at 78.) He takes the El train to visit relatives, however, he has no hobbies. (A.R. at 79–80.) He eats one to two meals a day and sleeps about six hours a night. (A.R. at 79.)

Smith claims he is hard of hearing, however, this condition does not affect his listening to the television, radio or talking in a regular conversation. (A.R. at 90–91.) Smith visited an ear doctor ten or twelve years ago, but he never returned and was never diagnosed for a hearing aid. (A.R. at 96–97.)

Finally, Smith testified that his condition has not changed significantly in the past two years, nor did it change significantly between December 1996 and February 1997, the dates of the two residual functioning capacity assessments performed by his treating physician, Dr. Baraglia. (A.R. at 89.)

### 2. The Vocational Expert's Testimony

Julie Rose, the Vocational Expert ("VE"), also testified at the hearing. (A.R. at 58, 92–101.) The VE stated that Smith's past work was classified as semi-skilled with an SVP of six, and that the exertional level was heavy in physical demand. (A.R. at 58.)

The ALJ asked the VE to give her opinion under three hypothetical situations, taking into consideration Smith's age, education, and work experience. Under the first hypothetical, the VE was asked to consider Smith's capabilities as set forth in Dr. Baraglia's December 16, 1996 residual functional assessment. (A.R. at 92.) The VE opined that, given the parameters of the hypothetical, Smith could not do his past relevant work, had no transferable skills, and did not have the ability to do any other jobs in the national economy. (A.R. at 93.)

Under the second hypothetical, the ALJ asked the VE to consider Smith's capabilities as set forth in Dr. Baraglia's February

19, 1997 residual functional assessment. (A.R. at 94.) The VE opined again that Smith could not do his past relevant work, had no transferable skills, and did not have the ability to do other jobs. (A.R. at 94.)

Under the third hypothetical, the ALJ asked the VE to consider Smith's capabilities as set forth in the August 27, 1996 residual functional assessment completed by a state physician and premised on an August 14, 1996 examination by Dr. Bharti. (A.R. at 94.) Given these parameters, the VE stated that the assessment would allow for medium exertion work. Although the assessment would not allow for past relevant work, the claimant would have transferable skills to the position of a forklift operator and a variety of other unskilled medium exertion positions. (A.R. at 95.) The ALJ then limited the hypothetical, allowing for Smith's claimed hearing difficulty, to which the VE suggested 1,000 forklift operator jobs in the six county Chicago metropolitan area with mild noise levels. (A.R. at 98.) The VE further suggested that of the 2,500 (A.R. at 29) unskilled positions indicated by Grid Rule 203.04, approximately 50% or 1,250 (A.R. at 29) would have mild noise levels. (A.R. at 98.)

## B. Medical Evidence

### 1. Dr. James P. Baraglia, Treating Physician

Dr. James P. Baraglia has been Smith's attending physician since 1978. In December 1996 and again in February 1997, Dr. Baraglia completed physical assessment forms which outlined Smith's limitations and ability to perform physical work.

In the December 1996 assessment, Dr. Baraglia noted that Smith had arthritis in his arm and elbow which limited the maximum amount of weight he could carry to twenty pounds. (A.R. at 227.) The doctor also noted that because Smith has arthritis in his knees, he could stand or walk zero hours in an eight hour day, however he was able to sit a continuous eight hours. (A.R. at 228.) Furthermore, Smith was unable to crouch, kneel or crawl, but was able to climb, balance and stoop occasionally. (A.R. at 228.) Finally, Smith's disability impaired his ability to reach, handle, push and pull. (A.R. at 229.) However, his ability to feel, see, hear, and speak were unaffected. (A.R. at 229.)

In the February 1997 assessment, Dr. Baraglia stated the reasons for Smith's disability as osteoarthritis, anemia, and high blood pressure resulting in fatigue, pain and limited range of motion. (A.R. at 240.) The doctor went on to state that Smith is incapable of walking even less than one city block without rest or severe pain, although he is capable of continuously sitting or standing for a maximum of one hour, (A.R. at 241) for a total of four hours in an eight hour day. (A.R. at 242.) Dr. Baraglia opined that the maximum weight Smith could lift on an occasional basis throughout an eight hour work day was ten pounds, and that in no case was Smith capable of lifting over ten pounds. (A.R. at 242.) Additionally, the doctor imposed significant workplace limitations on reaching, handling or fingering; he could not bend at the waist; and he could turn only 20% of the time. (A.R. at 242–243.)

In addition to the assessments, included in the record is the medical history of Smith, as recorded by Dr. Baraglia, from August of 1980 through February of 1995 (A.R. at 126—146) plus various hospital discharge reports and specialist reports dating back to 1981.

The medical records also include an August 6, 1986 audiologist's record from clinical audiologist Tish Graf to Dr. Boone Bracket, reporting that Smith has normal hearing in his left ear and mild hearing loss in his right ear with normal hearing at the 4KHz range. (A.R. at 154.) There are also several radiology reports dated between 1987 and 1989 indicating "minimal degenerative disease" in Smith's left knee, a "well preserved" right ankle mortise, and an "unremarkable" left shoulder. (A.R. at 158–160.)

### 2. Dr. Sanjay Bharti, Examining Physician

On August 14, 1996, Smith was examined and assessed by Dr. Sanjay Bharti. (A.R. at 196–201.) Smith told Dr. Bharti that he is disabled due to peptic ulcer disease, cirrhosis of the liver, and arthritis of the body, particularly in his knees, ankles, and shoulders. (A.R. at 196.) Smith claimed to have back pain all the time, but that the pain occurs mostly when he bends over, lifts over fifty pounds, or when he stands or sits for long periods of time. (A.R. at 196.) Smith stated to the doctor that he walks four or five blocks before he feels pain in his right ankle, but that walking sometimes makes him feel better. (A.R. at 196.) Smith also stated that he had a history of hypertension, for which he no longer takes medication. (A.R. at 196.)

Dr. Bharti conducted a thorough musculoskeletal system review, including a range of motion examination, finding no limitations except that Smith's ankle had a slightly limited range of motion (10 flexion out of a normal 20, and 30 extension out of a normal 40.) (A.R. at 198–200.) Smith was able to squat, touch his toes, and walk on his toes and heels. (A.R.198–200.) An X-ray was taken of Smith's right ankle finding "mild to moderate degenerative changes at the ankle joint." (A.R. at 201.) Despite this, Dr. Bharti noted that Smith's gait is "normal" and that he "is able to do his daily living without much of a problem." (A.R. at 196.)

### 3. Residual Physical Functional Capacity Assessment

A Residual Physical Functional Capacity Assessment was then completed by a state physician on August 27, 1996 based on Dr. Bharti's conversation with Smith, examinations and test results. (A.R.202–210.) The doctor found few limitations. She opined that the maximum weight that Smith could occasionally lift is 50 pounds, while the maximum weight Smith could frequently lift is 25 pounds. (A.R. at 203.) Smith could sit, stand, or walk (with normal breaks) for a total of six hours out of an eight hour day. (A.R. at 203.) More-over, the doctor found no postural, manipulative, visual, communicative (including hearing) or environmental limitations (including noise.) (A.R. at 204–206.) To support her conclusions, the doctor noted that Smith has mild degenerative joint disease in his right ankle and probably in his lumbar area, has a reduced range of motion in his right ankle, walks with his foot slightly everted, but that the degenerative arthritis does not significantly restrict him. (A.R. at 203.)

## II. THE DECISION OF THE ALJ

The ALJ determined that Smith was capable of performing medium work, and thus, was not disabled. (A.R. at 31.) The ALJ found no evidence in the record that Smith's impairments, either alone or in combination, produced significant functional limitation. (A.R. at 30.) The ALJ discussed the testimony from the hearing, as well as the medical evidence. (A.R. at 23–29.) The ALJ found that Smith had not engaged in gainful employment since January 1, 1985. (A.R. at 30.) The ALJ found that Smith was not credible in his pain complaints. (A.R. at 27.) Although Smith's long time physician proffered two assessments, as well as numerous medical records, the ALJ found the doctor's statements inconsistent and that the doctor was "bending over backwards to favor his patient." (A.R. at 28–29.) The ALJ instead relied upon the assessment of the state physician based on the exam of Dr. Bharti to determine Smith's residual functional capacity. (A.R. at 29.) Therefore, the ALJ found that Smith has the residual functional capacity to perform the full range of medium exertion physical work, limited to lifting up to fifty pounds occasionally and in excess of twenty-five pounds frequently in mild noise level environments. (A.R. at 30.)

The ALJ further found that Smith is unable to perform his past relevant work, but he is qualified to perform semi-skilled work in other positions. (A.R. at 30–31.) The ALJ found 1,000 forklift operator jobs

in the Chicago metropolitan area and 1,250 other medium exertion level jobs in the national economy for which Smith is qualified. (A.R. at 29–31.) The ALJ concluded that Smith is not under a disability, and is not entitled to disability benefits. (A.R. at 31–32.)

## III. THE DECISION OF THE APPEALS COUNCIL

Smith's request for review of the ALJ's decision was denied by the Appeal's Council. (A.R. at 6.) The Appeals Council found no basis for changing the ALJ's decision. (A.R. at 6.)

## IV. JUDICIAL REVIEW OF THE COMMISSIONER'S DECISION

Judicial review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir.1993). When the Appeals Council denies a request to review a case, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. of Health and Human Servs.,* 983 F.2d 815, 817 (7th Cir.1993). The district court is not free to consider evidence submitted for the first time to the Appeals Council. *Id.* The correctness of the ALJ's decision rests on the evidence that was part of the record as existed when that decision was made. *Id.*

A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgement for that of the Commissioner. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986). The ALJ has the duty to resolve material conflicts and make independent findings of fact. *Richardson v. Perales,* 402 U.S. 389, 399–400, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *see also Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir.1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales,* 402 U.S. at 401, 91 S.Ct. at 1427. The ALJ's decision must be affirmed if his findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support the claimant's argument. 42 U.S.C. § 405(g); *see also Pope v. Shalala,* 998 F.2d 473, 480 (7th Cir.1993). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815 n. 1, 117 L.Ed.2d 38 (1992). Finally, a credibility determination made by the ALJ will not be disturbed unless it is patently wrong. *Brewer v. Chater,* 103 F.3d 1384, 1392 (7th Cir.1997).

In the present case, the ALJ decision stands as the Commissioner's final decision because the Appeals Council denied Smith's request for review. This Court will review the ALJ's decision based on the evidence that was before the ALJ. *See Eads,* 983 F.2d at 817.

## V. ESTABLISHING A DISABILITY

Establishing a disability under the Social Security Act is a two-step process. First, the plaintiff must suffer from a medically determinable physical or mental impairment, or a combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano,* 614 F.2d 142, 143 (7th Cir.1980). That factual determi-

nation is made by using a five-step process. *See* 20 C.F.R. § 416.920.

The five-step process asks the following questions: (1) is the claimant presently unemployed; (2) is the claimant's impairment "severe"; (3) does the impairment meet or equal one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the claimant unable to perform his past relevant work; and (5) does the claimant's age, education, and past work experience, in reference to the residual functional capacity, preclude him from doing other work. 20 C.F.R. § 416.920(b)-(f).

An affirmative answer at any step leads either to the next step of the test, or at the third and fifth step, to a finding that the claimant is disabled. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir.1984). Other than at step three, a negative answer leads to a determination that the claimant is not disabled. *Id.*

The claimant has the burden of production and persuasion on steps one through four. *Tom v. Heckler*, 779 F.2d 1250, 1253 (7th Cir.1985); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir.1984). However, once the claimant shows an inability to perform past work (step four), the burden shifts to the Commissioner to show that the claimant has the ability to engage in some other type of substantial gainful employment. *Id.*

## VI. THE LEGAL STANDARD IN EVALUATING WEIGHT OF MEDICAL EVIDENCE

In deciding whether a claimant is disabled, the ALJ must consider the medical opinions along with the rest of the relevant evidence. Generally, the ALJ will give controlling weight to a treating physician's opinion that is consistent with other evidence if the opinion is supported by clinical and laboratory diagnostic tests. If the ALJ does not give controlling weight to a treating physician's opinion, the ALJ will consider the following factors when determining the weight to give: 1) the length of the relationship and frequency of examina-

tion, 2) the nature and extent of relationship, 3) whether the opinion is supported by medical signs and laboratory findings, 4) whether the opinion is consistent with the records as a whole, 5) specialization of the physician, and 6) other factors that may be brought to the court's attention. 20 C.F.R. § 404.1527(d).

"Thus, [a] treating physician's opinion is not conclusive and must be supported by medically acceptable clinical or diagnostic data.... Treating physician's opinion are only accorded great weight when they are supported by sufficient clinical findings.... The weight given a physician's statement depends upon the extent to which it is supported by medically acceptable clinical and laboratory diagnostic techniques." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir.1995).

## VII. THE ALJ'S DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD

The Court finds that there is substantial evidence in the record to support the ALJ's finding that Smith was not disabled. Using the five-step process required by 20 C.F.R. § 416.920, the ALJ found that at the time of hearing: (1) Smith was unemployed; (2) Smith has a severe inverted right foot, hypertension, and mild hearing loss in the left ear; (3) Smith's impairment does not meet or equal any of the listings of specified impairments; (4) Smith was unable to perform his past relevant work; and (5) Smith can perform semiskilled medium work.

Smith challenges the ALJ's decision both on legal and factual grounds. Smith argues that Dr. Baraglia's assessment should be given controlling weight. The Court finds that the ALJ used the correct legal standard set forth in 20 C.F.R. § 404.1527(d) when he gave more weight to the assessment of the state agency physician, and discounted the assessment of Smith's treating physician. Furthermore, Smith argues that the VE's opinion as to the exertion level of job that Smith is able

to perform is also incorrect because it relies upon Dr. Bharti's examination. Because the question of the type of jobs Smith is able to perform hinges upon his residual functional capacity and the ALJ's determination thereof, the claim is directed toward step 5 of the 5 step process in 20 C.F.R. § 416.920(b)-(f).

## A. Dr. Bharti's Opinion and Subsequent Assessment Support the ALJ's Conclusion

■ Dr. Bharti's examination and subsequent assessment provide substantial evidence to support the ALJ's decision. Dr. Bharti spent thirty minutes with Smith; reviewed his medical records; performed a muscoloskeletal examination that included a range of motion test; performed a neurological test; performed a limited mental status examination that inquired into Smith's memory, knowledge of general current events, ability to perform simple calculations, and ability to use good judgement in an emergency and manage his affairs; and took an X-ray. (A.R. at 196–201.)

Based on Dr. Bharti's examination, an assessment was made by a state physician. (A.R. at 202–209.) The state physician assessment found that, Smith could lift no more than fifty pounds on an occasional basis, and no more than twenty five pounds frequently. (A.R. at 203.) This assessment is consistent with Smith's statements to Dr. Bharti, (A.R. at 196) and Smith's testimony that only weights in excess of fifty pounds bothered him, while weights of twenty pounds caused no problem. (A.R. at 86). Furthermore, the limitations are in conformity with Smith's statement that his back pain is "mild" except for two or three times a week when he bends over. (A.R. at 84.) Finally, it is supported by Dr. Bharti's musculoskeletal examination which found no limitation on Smith's range of movement, except for his everted right foot, and that his back was "[n]on-tender with full range of motion." (A.R. at 197, 200.)

Dr. Bharti also found that Smith could sit, stand or walk for about six hours out of an eight hour day, taking "normal" breaks. (A.R. at 203.) Normal breaks, which Dr. Bharti's assessment advocates, is consistent with Smith's own testimony that he sits and watches television for about thirty minutes at a time without elevating his legs, then takes a break and walks around during about three commercials before he sits back down for another thirty minutes. (A.R. at 74.) It is also in agreement with Smith's testimony that he enjoys taking a daily walk for three to four blocks. (A.R. at 72.)

Furthermore, read carefully, the "push and/or pull (including operation of hand and/or foot controls)" portion of the assessment is "unlimited, *other than as shown for lift and/or carry*". (A.R. at 203 emphasis added). Therefore, one must look to the limitations for lifting and carrying to determine the limitations for pushing and pulling. The limitations, as noted above, are no more than fifty pounds on an occasional basis and no more than twenty five pounds on a frequent basis, (A.R. at 203) which is consistent with Smith's own testimony and conversation with Dr. Bharti. In addition, the limitations on hand and foot controls is supported by Bharti's findings that Smith has a strong grip with a power of ⅚ in all his limbs, that there is only a slight range of motion limitation in his right ankle, and that he has no swelling of his foot. (A.R. at 198.) Moreover, it is consistent with Smith's testimony that he has had an everted right foot his entire life which did not affect his ability to work in a heavy exertion level job for twenty-four years. (A.R. at 62.)

The assessment found no limitations on hearing or speaking, (A.R. at 206) in conformity with Smith's conversation with Dr. Bharti. Smith's hearing loss was not significant enough to be included in his own doctor's assessment as a workplace limitation. It was not significant enough to affect his listening to television or radio, or engaging in regular conversations. ( A.R. at 91.) It was also not significant enough for him to bother to see a doctor since

1986 or use a hearing aid. (A.R. at 96–97.) Despite the fact that the assessment contained no limitation on Smith's hearing ability, there is clinical evidence, based on a 1986 audiologist's exam, that there is mild hearing loss in Smith's right ear. Because the hearing loss was supported by laboratory and clinical diagnostics, the ALJ gave Smith the benefit of the doubt and took this into consideration when he found that there were a significant number of jobs in the economy with low noise level for which Smith is qualified. (A.R. at 30–31.)

**B. There is Substantial Evidence to Support the ALJ's Finding That the Opinion of Plaintiff's Treating Physician Should Not be Given Controlling Weight**

The treating physician's medical reports were riddled with inconsistencies with Smith's own testimony. Thus, the ALJ properly did not give controlling weight to Dr. Baraglia's opinion. Although Smith claimed that his medical condition did not change significantly between December of 1996 and February of 1997, (A.R. at 89) Dr. Baraglia's medical assessment of him did. Significant differences were recorded in the amount of weight that Smith could lift. Although in December 1996, the doctor stated the maximum weight Smith could lift was twenty pounds, (A.R. at 222) in February 1997 he stated the maximum weight Smith could lift was ten pounds. (A.R. at 242.) This opinion is incompatible with Smith's own testimony that he could lift up to thirty pounds, and regularly carries groceries weighing fifteen to twenty pounds with no problem. (A.R. at 86.) It is also inconsistent with Smith's statements to Dr. Bharti that his back hurts mostly when lifting over fifty pounds, (A.R. 196) implying that he can lift fifty pounds.

Dr. Baraglia's reports also contain inconsistencies in light of the short period between reports. Significant differences were recorded in the length of time that Smith could walk, stand and sit. In December 1996, Dr. Baraglia stated that Smith was able to walk or stand zero hours in an eight hour day (A.R. at 228), despite the fact that Smith himself claimed to take daily walks up to four blocks long. (A.R. at 72.) In February 1997, however, the doctor stated that Smith was able to stand or walk up to four hours, for one hour at a time, out of an eight hour day, although was physically incapable of walking less than one block. (A.R. at 241–242.) Again, this is in clear conflict with Smith's testimony that he regularly walks up to four blocks a day. (A.R. at 72.) Also, in December 1996, Dr. Baraglia recorded that Smith could sit a full eight hours out of an eight hour day, (A.R. at 228) however, in February 1997, he stated that Smith could only sit for four hours, for one hour at a time, out of an eight hour day. (A.R. at 241, 242.) This is also out of line with Smith's testimony that he can only sit approximately thirty minutes at one time. (A.R. at 74.)

Moreover, there are inconsistencies surrounding Smith's hearing ability. The audiologist's report from Dr. Baraglia's hospital, and presumably known to Dr. Baraglia, reports a mild hearing loss in Smith's right ear. (A.R. at 154.) However, there is no mention of any limitation due to hearing loss in either of Dr. Baraglia's December 1996 or February 1997 assessments.

The inconsistencies of Dr. Baraglia's assessment with Smith's testimony, and internal inconsistencies between Dr. Baraglia's two assessments, gave the ALJ good reason to view the doctor's assessments with skepticism. The ALJ was justified in relying on evidence that was supported by objective clinical testing, such as those tests performed by Dr. Bharti.

**C. There is Substantial Evidence in the Record to Support the ALJ's Conclusion that there are a Significant Number of Jobs Available in the National Economy for an Individual With Smith's Limitations**

There is substantial evidence to support the ALJ's findings that there are a

significant number of jobs in the national economy for which Smith is qualified. Based on the residual capacity assessment predicated upon Dr. Bharti's examinations, Smith's age, educational level and acquired work skills, the VE found that Smith had transferable skills and was capable of performing as a forklift operator and other unskilled medium exertion level work. (A.R. at 94.) Taking into account Smith's hearing loss, the VE stated that there were 1,000 forklift operator jobs in the six county Chicago metropolitan area and 1,250 other medium exertion level jobs in the national economy for which Smith was qualified with mild noise level environments. (A.R. at 29, 98.)

## VIII. CONCLUSION

The ALJ's carefully reasoned decision is supported by substantial evidence. For the foregoing reasons, **Defendant's motion for summary judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED, and the decision of the ALJ dated June 26, 1997 is affirmed.**